UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JUAN CARLOS PEÑA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RICARDO MORENO, )<br>)<br>Defendant. )<br>) | Civ. A. No. 04-10225-RCL |

**Plaintiff's Response to Defendant's Motion to Remove Default and
Plaintiff's Request for a Status Conference with the Court**

Plaintiff respectfully submits this memorandum in response to the Defendant's motion to set aside the entry of default issued by this Court on March 23, 2004. *See* Docket Entry 3. This response is supported by the Declaration of Todd S. Heyman filed herewith ("Heyman Decl."). Plaintiff's Counsel believes that the Defendant's Motion to Remove Default presents a misleading and inaccurate portrayal of the history of interactions between the parties and the extent to which the Defendant has been represented by counsel throughout these proceedings – whether or not such counsel actually filed an appearance in this action. Accordingly, in order to address the confusion generated by the Defendant's conduct, Plaintiff requests that this Court hold a status conference with Defendant, counsel for Defendant who has appeared and moved to set aside the entry of default, and Plaintiff's Counsel, at the Court's earliest convenience.

**FACTUAL BACKGROUND**

Plaintiff filed this action seeking unpaid wages under both federal and Massachusetts law on February 4, 2004. *See* Docket Entry 1. The Defendant was served

on February 24, 2004, and the answer was due on March 2, 2004. *See* Docket Entry 2. On February 26, 2004, Plaintiff's Counsel Todd Heyman ("Heyman") received a phone call from Attorney David Faye ("Faye") indicating that he would probably be representing the Defendant Ricardo Moreno ("Moreno"). *See* Heyman Decl. ¶2. In that conversation, Plaintiff's Counsel agreed to Faye's request for an extension of time to respond to the complaint up to and including March 11, 2004.[1] *Id.*, ¶ 3. Heyman and Faye also discussed the factual allegations in the complaint. *Id.*, ¶4.

On March 8, 2004, Heyman received a voice mail message from the Defendant directly indicating his desire to discuss the case directly with him. *Id.*, ¶5. Plaintiff's Counsel did not return the voice mail message from Defendant believing him to be represented by Faye. *Id.*

Later that same day, Plaintiff's Counsel received a call from Faye, and Heyman and Faye had two separate telephone conversations that day. *Id.*, ¶6. During these conversations, the following matters were discussed: (1) Faye requested a rough estimate of Plaintiff's damages (which Plaintiff's Counsel calculated and subsequently communicated to Faye); (2) Plaintiff's Counsel requested that Faye inform his client that he may not contact Plaintiff directly (which Faye agreed to do); and, (3) Plaintiff's Counsel informed Faye he would not respond to Defendant Moreno's earlier voice mail message because Faye was representing him. *Id.*

---

[1] Defendant never filed any motion seeking an extension of time to respond to the complaint with the Court. Heyman Decl. ¶3; *see generally* Docket Report for this action, 04-10225-RCL.

On March 11, 2004, the deadline Plaintiff's Counsel had assented to for Defendant to respond to the complaint, Plaintiff's Counsel received another voice mail message from Faye. *Id.*, ¶7. In this message, Faye informed Plaintiff's counsel that: (1) Defendant Moreno had not responded to Faye's phone messages, and had ignored Faye's requests to come to Faye's office; (2) Faye could not grant Moreno "any more courtesies" in light of Defendant Moreno's refusal to cooperate and the impending deadline to file an answer; and, (3) Faye had informed Defendant Moreno that he could not represent him, and Faye gave Plaintiff's Counsel permission to contact Defendant Moreno directly. *Id.*

As a result, later that same day, Plaintiff's Counsel contacted Defendant Moreno and had a lengthy conversation with him concerning, among other topics, Defendant Moreno's need to respond to the complaint. *Id.*,¶8. Because Defendant stated that he was having difficulty finding an attorney to represent him, Plaintiff's Counsel agreed to yet another extension, until March 25, 2004, for Defendant to respond to the complaint, and confirmed this agreement by letter on that same day. *Id.*,¶8 and Ex.A thereto (copy of letter dated March 25, 2004). By both telephone and letter, Plaintiff's Counsel also provided Defendant with contact information for the Court's administrative personnel who assist *pro se* parties in finding counsel. *Id.*

On March 15, 2004, Plaintiff's Counsel contacted the Court's clerk to inquire whether a motion was required for an extension of time given that the Defendant was now *pro se* and Plaintiff's Counsel had assented to the extension. *Id.*,¶9. The Court's clerk informed Plaintiff's Counsel that given the absence of a motion to extend the time to respond to the complaint, there was the risk of the Defendant being defaulted. *Id.*

Plaintiff's Counsel so informed Defendant Moreno by leaving him a voice mail message that he must seek an extension of time to answer, and provided Moreno with the contact information for the Court so that he could request the extension by formal motion. *Id.*

On or around March 18, 2004, Plaintiff's Counsel received a copy by mail of a motion seeking an extension of time to respond to the complaint which was dated March 16, 2004, and the certificate of service indicated that Defendant would file a copy with the Court by hand on Wednesday, March 17, 2004. *Id.*, ¶10. However, that motion was apparently not filed by hand with the Court until March 25, 2004. *See Id.* and Exhibit B thereto (copy of motion as filed with Court on Mar. 25, 2004); *see also* Docket Entry 6.[2]

On March 23, 2004, Plaintiff's Counsel received electronic notice from the Court of an entry of default against Defendant issued that same day. Heyman Decl. ¶12. Two days later, on March 25, 2004, an Attorney Moura appeared at the office of Plaintiff's Counsel requesting to speak with Plaintiff's Counsel. At that time, Moura served, by hand, two pleadings on Plaintiff's Counsel – a motion to dismiss and an affidavit in support of the motion to dismiss. *Id.*, ¶13 and Ex. C and D thereto (copies of the motion to dismiss and supporting affidavit). The motion to dismiss was not signed by Attorney

---

[2] In the motion seeking an extension of time to respond to the complaint, the Defendant indicated that he was in the process of seeking and retaining an attorney. Heyman Decl. ¶11 and Ex. B thereto. However, the motion was actually filed by hand by an attorney, Paulo J. Moura ("Moura"), on March 25, 2004. *Id.*; *see also* Docket Entry 6. When filing the motion by hand with the Court, Moura indicated by hand writing on the document that it was actually sent to the Court by FAX from his office (with his office's FAX cover sheet) on or before March 18, 2004. *Id.* Accordingly, it is unclear when the motion was filed and when Moura's representation of Defendant Moreno began. Because Moura simply stated he was "doing this" without being more specific, it is also unclear what role Moura played (if any) in drafting the motion to dismiss and supporting affidavit, and precisely when he began to provide any such services to the Defendant.

4

Moura or any other attorney; it was signed *pro se* by the Defendant Moreno. *Id.*, Moura told Plaintiff's Counsel that he was "doing this" as a favor for Defendant and would not be representing the Defendant in this action. *Id.* Plaintiff's Counsel informed Moura that the Defendant had been defaulted, and Moura and Plaintiff's Counsel further discussed the merits (or lack thereof) of Defendant's motion to dismiss and the factual allegations in the case. *Id.*

On March 29, 2004, Plaintiff's Counsel received electronic notice of three pleadings filed with the Court on behalf of Defendant – the motion for an extension of time that Plaintiff's Counsel had received on or about March 18, 2004, a motion to remove default, and a supporting affidavit to that motion signed by Moura. *Id.*, ¶14 and Ex. B, E, and F respectively (copies of the three pleadings); *see also* Docket Entries 6, 4, and 5 respectively. Plaintiff's Counsel did not receive electronic notice of the filing of the motion to dismiss and the accompanying supporting affidavit. Heyman *Decl.*, ¶ 15. The motion seeking removal of default referenced the motion to dismiss and indicated that it too was filed on March 25, 2004. *Id.* and Ex. E thereto; *see also* Docket Entry 4.

As a result, on March 29, 2004, Plaintiff's Counsel contacted both the Court's clerk and Moura requesting clarification of whether Defendant actually had filed the motion to dismiss and supporting affidavit – which had been served on Plaintiff's Counsel by Moura himself on March 25, 2004. Heyman Decl. ¶16. Plaintiff's Counsel has yet to obtain clarification on this point from Moura and the Court's electronic docket report does not (as of the filing of this pleading) reflect that those documents were filed in this action. *Id.* Once clarification has been obtained, and if the motion to dismiss was

filed, Plaintiff will move to strike that motion and hereby reserves his right to do so.[3] Plaintiff has filed the present response to the motion to remove the default as soon as possible in order to ensure that the Court has all the appropriate information in considering the Defendant's motion to set aside the default.

### RELIEF REQUESTED

At this point in time, Plaintiff opposes the Defendant's Motion to Remove Default because it is unclear whether the Defendant acted in good faith in representing to Plaintiff's Counsel that he was having difficulty obtaining counsel. Based on Defendant's representations to that effect on March 11, 2004, Plaintiff's Counsel assented to an extension of time to respond to the complaint until March 25, 2004. However, it appears that Defendant had obtained the assistance of Moura well before Moura's filing of an appearance in this action on March 25, 2004. By at least March 18, 2004, and perhaps earlier, Moura appears to have been providing legal services to the

---

[3] Not only would the motion have been filed after the entry of default, which should render it a nullity, see *Kingvision Pay-Per-View Ltd. v. Niles*, 150 F.Supp.2d 188, 189 (D.Me. 2001)(". . . once default has been entered, the only appropriate response for a defendant to make is a motion to set aside default."), but it improperly seeks dismissal on factual grounds (that Defendant was not Plaintiff's employer) which cannot be resolved on a motion to dismiss. Moreover, Defendant's improper factual averments made in connection with the motion to dismiss, even if true, would not support judgment as a matter of law. This is because Defendant submitted evidence regarding the purported true identity of Plaintiff's employer for only one week of employment during the relevant period, and, more importantly, under the Fair Labor Standards Act, an employer "includes any person acting directly or indirectly in the interest of an employer." *See Donovan v. Bullock's Nursing Service, Inc.*, No. 83-4186, 1984 WL 3161 (D.Mass. Mar.12, 1984)(J.Keeton)(quoting 29 U.S.C. 203(d) and citing other authorities indicating the statute is interpreted broadly "to effectuate the remedial purposes of the FLSA."). Plaintiff will submit to the Court full briefing on the definition of an employer under the statutes at issue, as well as evidence demonstrating Defendant is an employer for purposes of the claims advanced against him, if Defendant has actually properly filed the respective pleadings.

Defendant. *See* Docket Entry 6 (Moura indicating he had FAXed the motion for an extension of time "on or before March 18, 2004" from his office). As a result, it is also not clear whether Defendant understood the ramifications of failing to answer as of March 8, 2004 when he was refusing to cooperate with Faye – the first attorney from whom he obtained legal assistance in connection with this matter.

If Defendant was fully aware of the risk of default through communications with either Faye or Moura, or had obtained the assistance of Moura to prepare his response prior to March 11, 2004, but still failed to timely answer the Plaintiff's complaint, Plaintiff must oppose Defendant's motion to set aside the entry of default. *See Kingvision*, 150 F.Supp.2d at 190 (one factor to consider in whether there is good cause to set aside a default is whether the default was willful). Because it is not clear whether Defendant and/or Moura have been entirely candid with Plaintiff's Counsel, Plaintiff opposes the Defendant's motion to set aside the default at this time.

Moreover, because of the confusion generated by the conduct of Defendant and Moura discussed herein, Plaintiff's Counsel respectfully requests a status conference with both Defendant and Moura at the Court's earliest convenience.

## CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests a status conference with Defendant and Attorney Moura at the Court's earliest convenience and, at this time, opposes the Defendant's Motion for Removal of Default.

By his Attorneys,

*(signature)*

Todd Heyman (BBO # 643804)
SHAPIRO HABER & URMY LLP
75 State Street
Boston, MA 02109
(617) 439-3939

## CERTIFICATE OF SERVICE

I hereby certify that on __3/30__, 2004, I caused a true and accurate copy of the above document to be served by __overnight mail__ on the Defendant Ricardo Moreno at 7 Surro Drive, Framingham, MA 01701, and counsel for the Defendant, Paulo J. Moura, at Moura & Moura, 11 Russell St., Plymouth MA 02360.

_____   3/30/04
                                  Date